# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 27th day of June, 2019.*

Present: All the Justices

William D. Sroufe,                                                                              Appellant,

  against      Record No. 181014
               Circuit Court No. CL15000126-00

Muriel Tamera Waldron,                                                                        Appellee.

Upon an appeal from a judgment rendered by the Circuit Court of Patrick County.

Upon consideration of the record, briefs, and argument of counsel, the Court is of opinion that there is reversible error in the judgment of the circuit court.

William D. Sroufe, Ed.D., is the division superintendent for Patrick County Public Schools. Prior to the events that gave rise to the proceedings below, Muriel Tamera Waldron was principal of Stuart Elementary School in Patrick County.

At a meeting in April 2015, Dr. Sroufe removed Waldron as principal and ordered her not to return to the school. He told her that he was transferring her to the central office and would recommend that the school board reassign her to a teaching position the following school year. He provided her with a letter to that effect. The letter included the following statement ("the Statement"), which, together with others in the letter, purported to justify Dr. Sroufe's actions:

> You failed to ensure that the [Individualized Education Program ("IEP")] Teams understand the [Virginia Alternative Assessment Program ("VAAP")] participation criteria and apply them appropriately when considering students with disabilities for the VAAP. Your actions will result in students being required to take [Standards of Learning ("SOL")] assessments who, under a correct interpretation of the criteria, should not have been required to do so.[1]

---

[1] An IEP is a personalized set of educational goals for each student with special instructional needs. Teachers tailor instruction to a student's IEP, so the student may not be

The letter eventually came into the possession of the local news media.  Waldron subsequently filed a fourth amended complaint alleging, as relevant to this appeal, that the Statement was defamatory.  The matter proceeded to trial by jury.

After Waldron rested her case-in-chief, Dr. Sroufe moved to strike her evidence, arguing that the Statement either (1) was opinion, (2) was true, or (3) lacked defamatory sting.  The circuit court denied the motion.  After the conclusion of all the evidence, Dr. Sroufe again moved to strike.  The court again denied the motion.  The jury thereafter returned a verdict for Waldron and awarded her $500,000 in compensatory damages.

Dr. Sroufe then moved to set aside the verdict on the same grounds as his motions to strike.  The circuit court denied the motion for reasons set forth in a letter opinion, which was incorporated into an order entering judgment in accordance with the jury's verdict.  Dr. Sroufe appeals.

"Where the trial court has declined to strike the plaintiff's evidence or to set aside a jury verdict, the standard of appellate review in Virginia requires this Court to consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff." *Bitar v. Rahman*, 272 Va. 130, 141 (2006) (alteration omitted).  The Court "will not set aside a trial court's judgment sustaining a jury verdict unless it is plainly wrong or without evidence to support it." *Parson v. Miller*, 296 Va. 509, 524 (2018) (internal quotation marks omitted).

However, "[e]nsuring that defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages, is an essential gatekeeping function of the court." *Webb v. Virginian-Pilot Media Cos.*, 287 Va. 84, 90 (2014).  Expressions of opinion are not actionable as defamation. *Lewis v. Kei*,

---

taught according to grade-level SOL but instead to Aligned Standards of Learning ("ASOL") consistent with his or her individual needs.  In such situations, students in appropriate grade levels may be assessed under the VAAP instead of the standardized SOL assessment tests on which school, educator, and student performance is evaluated.  Participation in the VAAP is based on five criteria:  whether the student has an IEP, or one is being developed for him or her; whether the student has "significant cognitive disabilities"; whether the student's performance indicates the need for "extensive, direct instruction" or an ASOL-based curriculum; whether the student requires "intensive, frequent, and individualized instruction" in diverse settings; and the type of diploma the student is working toward.

281 Va. 715, 725 (2011). Whether a statement is an expression of opinion is a question of law, which this Court reviews de novo. *Cashion v. Smith*, 286 Va. 327, 336 (2013). In reviewing whether a statement is an expression of opinion, the Court considers the statement as a whole. *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47 (2009). "When a statement is relative in nature and depends largely on a speaker's viewpoint, that statement is an expression of opinion." *Id.*

Evaluated in light of these principles, the Statement was an expression of Dr. Sroufe's opinion. Waldron's own testimony emphasizes this conclusion. When she was questioned during cross-examination in her case-in-chief about whether she believed that anyone who disagreed with her assessment that certain students did not qualify under the VAAP criteria must be wrong, she answered, "Not necessarily. Opinions differ." Cross-examination then proceeded as follows:

> Q: Isn't that one of the things about VAAP that makes it sometimes difficult, that reasonable people can disagree over whether or not it applies to a particular student?
> A: Reasonable people can disagree.
> Q: I might look at it and say, "Gee, I think maybe that VAAP would be appropriate," and you might look at it and say, "No, VAAP is not appropriate"?
> A: When you're applying criteria and you're using all of the information that you share in an IEP team meeting, based on the criteria, all of [the relevant students], with the exception of one, would not qualify for the VAAP.
> Q: In your opinion?
> A: In my opinion and in the team's opinion.

When later asked whether there had ever been a dissent within an IEP team as to a student's eligibility for participation in the VAAP, Waldron testified that the meetings were collaborative, but that parents, for example, might disagree with an outcome and admitted that "it's possible to have a dissent."

Just as a student's parents may disagree with an IEP team's assessment of their child or an IEP team member may dissent from the majority of the team's conclusion whether a student is eligible for participation in the VAAP, Dr. Sroufe was able to reach an independent conclusion about Waldron's IEP teams' application of the VAAP participation criteria. And, as Waldron's supervisor rather than subordinate, Dr. Sroufe's divergent opinion had greater weight and came with substantial consequences. But it remained opinion because it was relative in nature and

3

depended largely on his own, independent viewpoint. The Statement therefore was not actionable as defamation, and the claim should not have been submitted to the jury.

The circuit court correctly determined that the Statement was opinion when Dr. Sroufe moved to strike the evidence when Waldron rested her case-in-chief. It specifically referred to Waldron's testimony that reasonable people could disagree. Nevertheless, the court denied the motion, stating "I'm interested to see what will happen," and "I want to see what a jury will do." It opined that "[i]f the [j]ury comes back and gives her two million dollars, I will be the villain and most likely will set it aside."

Dr. Sroufe renewed his motion to strike at the conclusion of all the evidence, and the circuit court again denied it. After the jury returned its verdict and award, he moved to set them aside. Contrary to the court's earlier prediction when it denied Dr. Sroufe's first motion to strike, it denied this motion, too. It stated its reasoning in an amended letter opinion, which merits special scrutiny.[2]

First, the court ruled that "[t]he statement for the jury in this case fails to be actionable for three reasons. First, according to the plaintiff's own evidence, the statement at issue in this case is simply opinion." Again noting Waldron's testimony in her case-in-chief, the court went on to note additional evidence from both parties' witnesses that the VAAP participation criteria are inherently subjective. It reiterated that "[l]egally speaking, Dr. Sroufe's statement is an opinion and not actionable." It then articulated alternative rulings that if the Statement was not opinion, it was true, and that if neither opinion nor true, it lacked "the requisite defamatory 'sting.'"[3] (Internal quotation marks omitted.)

Second, in its conclusion, it again held that Dr. Sroufe's "statement is not, as a matter of law, defamatory, and it will not support a verdict in Ms. Waldron's favor." It continued:

> My legal conclusion in this matter comes as no surprise to the plaintiff; the record reveals I stated throughout the trial that I thought the statement in this case was not actionable as a matter of law. It is opinion; if it is not opinion, it is true; and if it is factual and false, it is too mild to be defamatory. However, as I mentioned to [Waldron's counsel], I have always felt this is a message case, and for that reason—and to provide an alpha-to-omega appeal record—I allowed the plaintiff to have her full day in court.

---

[2] The letter opinion is extraordinary in several troubling respects but the Court limits its review in this order to those within the scope of this appeal.

[3] Because this Court agrees with the circuit court's ruling that the Statement is opinion and therefore not actionable, it does not reach these alternative bases.

4

. . . .

      While I am virtually certain that this verdict is legally flawed and will not survive [appellate] scrutiny, I am also aware that seven objective citizens spoke in very loud and very clear terms, and I feel that their verdict is being utterly ignored by the audience that should be the most attentive. More to the point, I am convinced that if I simply set aside this verdict, then there will be a return to business as usual, and that variety of business is the very mischief that prompted the biggest jury verdict in the history of this county. While I understand that the school board has no financial exposure and is operating under the assumption (most likely correct) that this verdict is not legally sound and will be set aside— and therefore is not inclined to address the issue at the heart of this lawsuit—I would hope that my ruling below will give them a chance to explore precisely what went wrong with their system, perhaps via another mediation or a review with a qualified neutral.

      This jury indicated it was mad as heck. [It] didn't quite direct its anger in the right way and at the right time legally, but its voice needs to be heard a little bit longer. My hope is that this verdict will be taken seriously and productively addressed in the months ahead while this case is on appeal.

. . . .

      Accordingly, and in light of the foregoing, and with the full expectation that I will be reversed by a unanimous Supreme Court of Virginia, I hereby affirm the verdict.

In a footnote, the trial judge further acknowledged that Sroufe

      will suffer a short-term penalty in this matter. Still, this case, no matter what my ruling, is headed to the Supreme Court, and the only difference is that the defendant will be the petitioner and not the respondent. The issues, briefs and costs for each side will be essentially the same.

As noted above, "[e]nsuring that defamation suits proceed only upon statements which actually may defame a plaintiff, rather than those which merely may inflame a jury to an award of damages, is an essential gatekeeping function of the court." *Webb*, 287 Va. at 90. In this case, the trial judge ignored that function by consciously disregarding the law and permitting the jury to return a verdict and award damages on a statement that he knew was not actionable as defamation as a matter of law. The case should have been dismissed on Dr. Sroufe's first motion to strike, and the court erred by failing to do so. It compounded this error by failing to do so on his second motion to strike, and compounded it yet again by failing to set aside the jury's erroneous verdict after the trial ended.

The attitude expressed in the letter opinion is deeply troubling. It displays a profound misapprehension of the proper role and responsibilities of a judge. There is a difference between

self-deprecating acknowledgement of the hierarchy within the judicial branch, and the possibility that one's ruling is erroneous on one hand, and recognition to the point of near-certainty what the correct legal ruling should be but consciously choosing to rule the opposite way—especially to "send a message" to one of the parties—on the other. The first simply expresses an appreciation of human fallibility. The second is an abdication of the duty of a judge—to the parties, who bring their claims to the court for adjudication at great expense; to the attorneys, whose time and efforts are paid for and expended to present those claims competently and professionally; to the jurors, whose daily lives have been disrupted to aid the court in rendering judgment; and to the people of the Commonwealth, who entrust their judges to correctly apply their legal training, experience, and expertise when resolving the questions put to them for decision.

As this Court recently observed, the power to render judgment includes the power to render an erroneous one. *Commonwealth v. Watson*, 297 Va. ___, ___ (2019). But that observation presumes the best efforts, reasoned judgment, and good faith of the judge. A court's power to render an erroneous judgment is not an invitation to judges to render one in knowing and conscious disregard for the law, with the assumption that someone else higher in the judicial hierarchy will correct it later. The trial judge's misinterpretation and misuse of judicial power in this case unnecessarily prolonged trial and led to this full appellate review on the merits, which, despite his assertion to the contrary, has not only delayed the just adjudication the parties were entitled to but also imposed very real financial burdens on them. This Court must and does reprove it.

For these reasons, the Court reverses the judgment of the circuit court and enters final judgment for Dr. Sroufe. This order shall be published in the Virginia Reports and certified to the Circuit Court of Patrick County.

A Copy,

Teste:

Douglas B. Robelen, Clerk

6